### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LANCE BOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. |
| | ) |
| CBRE, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, Lance Bond, for his claims against defendant CBRE, Inc. ("CBRE") states and alleges the following:

## JURISDICTION AND VENUE

1. This is an employment case based upon and arising under 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").

2. This court has subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331, since these claims arise under federal statutory law.

3. All of the unlawful acts and practices set forth below were committed in the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

4. Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") an administrative charge encompassing the wrongful acts alleged in this action. Plaintiff received a right-to-sue letter from the EEOC, and filed this action within 90 days of the receipt of that letter.

## PARTIES

5. Plaintiff, Lance Bond, is an African-American male who resides in Tonganoxie, Leavenworth County, Kansas and was formerly employed by defendant CBRE, Inc.

6. Defendant, CBRE, Inc., is a Delaware corporation registered and doing business in the State of Kansas. Defendant can be served upon its Resident Agent, the Corporation Commission, 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

## FACTUAL ALLEGATIONS

7. Plaintiff is an attorney licensed and in good standing in the State of Kansas.

8. Plaintiff began working for Defendant as a contractor employed by contracting company, Great Plains Technical Services as a non-attorney contract negotiator, in 2009.

9. From 2011-2013 Plaintiff was employed elsewhere but returned to working with CBRE as a contractor, employed by Great Plains Technical Services as a non-attorney contract negotiator, in 2013.

10. At the time of Plaintiff's employment interview with CBRE in 2013, Plaintiff disclosed to the CBRE interviewers, all of whom were CBRE management, that Plaintiff had a small law practice on the side. The CBRE onboarding team expressed approval of Plaintiff's practice.

11. In November 2015, Plaintiff was formally hired by CBRE and meritoriously promoted to Senior Transactions Manager in October 2017.

12. As Senior Transactions Manager, Plaintiff was responsible for managing the retail real estate portfolio for Sprint Corp. in the southeastern United States region. This position required Plaintiff to work closely with Sprint personnel.

13. In each of Plaintiff's annual performance reviews with CBRE, Plaintiff received high marks, including a perfect 4 overall performance rating in all four annual performance reviews.

14. In 2018, a Sprint director, Robert Rodriguez, confronted the Plaintiff and made racially motivated comments toward and about Plaintiff.

15. After making internal complaints to Sprint and CBRE regarding the Sprint director's conduct, a Sprint manager and Sprint director began retaliating against Plaintiff by openly disparaging Plaintiff in meetings and scrutinizing his work.

16. On August 15, 2018, after attempting all available internal reporting procedures at both Sprint and CBRE, Plaintiff filed a Charge of Discrimination with the EEOC, Charge 563-2018-02749, for race and color discrimination and retaliation against Sprint relative to the conduct of the named Sprint manager and Sprint directors.

17. In November 2018, Robert Huebner was assigned by CBRE to supervise Plaintiff's retail real estate department servicing the Sprint account.

18. On or about November 19, 2018, Plaintiff met with Huebner and specifically recounted the discrimination he had experienced while working with Sprint and the pending EEOC Charge. Plaintiff told Huebner that Plaintiff would no longer tolerate an abusive, hostile work environment and would no longer accept CBRE management's complicity for refusing to stop the hostile work environment or retaliation for the same.

19. Huebner was visibly angry during the November 19, 2018 meeting.

20. As soon as November 21, 2018, Huebner began retaliating against Plaintiff by advancing false information regarding Plaintiff, Plaintiff's work performance and management style.

21. On December 20, 2018, Plaintiff filed EEOC Charge 563-2019-00673 against CBRE for race discrimination and retaliation due to Huebner's retaliatory behavior.

22. Subsequent to the filing of Charge 563-2019-00673, Plaintiff began meeting regularly with Huebner to address the issues between them. As a result, Plaintiff voluntarily withdrew the charge in March 2019.

23. On October 3, 2019, Huebner took a sudden leave of absence for undisclosed reasons.

24. Upon information and belief, Huebner's leave of absence was because Huebner refused to continue working with Plaintiff because Plaintiff continued to oppose what Plaintiff in good faith believed to be racially motivated hostility from Huebner.

25. On November 12, 2019, Plaintiff's new interim supervisor, Martin Prins, was caught disparaging Plaintiff on a hot microphone during a video conference. Plaintiff made a complaint to CBRE management but no action was taken.

26. On November 15, 2019, Huebner's supervisor, Alicia Chidsey, approached Plaintiff regarding an "opportunity" to leave his current position and work in a "high level executive-visible position."

27. Chidsey had a long professional and personal relationship with Huebner.

28. Upon information and belief, the offer from Chidsey was an attempt to remove Plaintiff from his position in retaliation for opposing racially motivated hostility from Huebner and to clear the way for Huebner to return to work without having to work with Plaintiff.

29. The duties of the position offered by Chidsey did not match Plaintiff's training or experience, there was no pay raise, no promotion in title and Plaintiff would lose all of his direct reports.

30. Chidsey insisted that Plaintiff was the only employee at CBRE who was qualified for this new position.

31. On November 18, 2019, Plaintiff notified Chisey that he was declining the offer and would stay in his current position.

32. On November 22, 2019, Chidsey emailed Plaintiff regarding an allegation of inappropriate behavior toward a Sprint client.

33. The allegation later proved to be unsubstantiated.

34. Plaintiff later discovered that Chidsey directed Human Resources to put the disciplinary complaint in Plaintiff's personnel file without following CBRE personnel procedures.

35. Upon information and belief, Chidsey was attempting to retaliate against Plaintiff by "documenting" Plaintiff's personnel file with disciplinary matters in anticipation of Plaintiff's performance review.

36. On December 2, 2019, Huebner returned to CBRE in the position previously offered to Plaintiff.

37. On December 8, 2019, after overhearing other CBRE employees discussing pay, Plaintiff raised a concern with CBRE Human Resources that his pay was not commensurate with similarly situated white employees.

38. On December 19, 2019, Plaintiff had a phone call with Human Resources representative Amy Dozier regarding the pay disparity concern. Dozier confirmed that Plaintiff was being paid less than white employees but attributed the disparity to retail experience. Dozier later confirmed that she did not have Plaintiff's resume and was not actually familiar with his work experience.

39. In late December 2019, as part of the annual performance evaluation process, Plaintiff included in his self-evaluation submitted to CBRE management a complaint that at least two female employees in Plaintiff's department had been passed over for promotion in favor of less qualified male employees.

40. On January 7, 2020, having exhausted internal CBRE grievance procedures, Plaintiff filed EEOC Charge 563-2020-00853 against Defendant, alleging race discrimination relative to the pay disparity.

41. On March 4, 2020, Chidsey again alleged inappropriate behavior against Plaintiff. Plaintiff elevated the complaint to regional HR management before Chidsey conceded that Plaintiff's behavior was appropriate and did not warrant disciplinary action.

42. On April 15, 2020, Plaintiff was nominated for an internal award but Chidsey, based on information and belief, rejected the nomination, something which had never previously happened to the CBRE manager who submitted Plaintiff for the award.

43. On April 23, 2020, Plaintiff participated in mediation through the EEOC Mediation Office.

44. Following mediation, CBRE used information obtained at mediation to open an "audit" of employees' outside legal work, but the only employees investigated were Plaintiff, Plaintiff's five senior transaction manager colleagues, none of whom are licensed attorneys, and Plaintiff's immediate supervisor.

45. CBRE's policy regarding outside employment is listed on page 25 of the CBRE "U.S. Employee Handbook" dated September 1, 2015 provided to Plaintiff during the CBRE employee onboarding process. CBRE has no policy prohibiting employees who are licensed attorneys from practicing law outside of their CBRE employment.

46. At all times during Plaintiff's employment at CBRE as a contractor and employee, Plaintiff's supervisors, CBRE HR, and CBRE directors were aware and approved of Plaintiff's side law practice and on multiple occasions referred clients to Plaintiff or requested legal advice.

47. On April 30, 2020, Plaintiff filed EEOC Charge 563-2020-01847 regarding retaliation relative to CBRE's investigation into Plaintiff's law practice and retaliatory scrutiny of Plaintiff's work.

48. On May 8, 2020, under the pretext that Plaintiff violated CBRE's policy regarding outside work, Defendant terminated Plaintiff's employment.

### COUNT I:  DISPARATE TREATMENT IN VIOLATION OF TITLE VII AND 42 U.S.C. § 1981
(Relative to Race)

49. The foregoing paragraphs are incorporated herein by reference.

50. Based on his race, Plaintiff was treated by Defendant differently than similarly situated non-minority employees in regard to the terms and conditions of his employment. This discriminatory treatment encompassed rate of pay, discipline, and ultimately termination from employment.

51. As a result of this discriminatory treatment, Plaintiff has suffered damages consisting of emotional distress, mental anguish, loss of enjoyment of life, and past and future financial loss.

52. In discriminating against Plaintiff, Defendant acted with malice or with reckless indifference to plaintiff's federally protected rights. Consequently, Defendant is liable for punitive damages.

WHEREFORE, Plaintiff prays for judgment against defendant for damages in excess of $100,000.00, consisting of emotional distress, mental anguish, loss of enjoyment of life, past

financial loss, future financial loss or reinstatement, punitive damages, attorney fees and litigation expenses, and prejudgment interest.

## COUNT II:  RETALIATION IN VIOLATION OF TITLE VII AND 42 U.S.C. § 1981
(Relative to Race)

53. The foregoing paragraphs are incorporated herein by reference.

54. Plaintiff, in good faith, opposed what he believed to be racial discrimination. Specifically, Plaintiff periodically complained to his supervisors and to the CBRE Human Resources office in regard to the race discrimination to which he was subjected.

55. In addition, Plaintiff filed six charges with the EEOC, one against Sprint and five against Defendant CBRE, regarding the disparate treatment and, subsequently, retaliation Plaintiff experienced in the course of his employment with CBRE.

56. Because of his complaints with the EEOC, Plaintiff was subjected by CBRE to a pattern of retaliatory employment actions, including being subjected to inappropriate comments and ridicule supervisors, attempts to remove Plaintiff from his position, attempts to discipline Plaintiff, and ultimately the termination of Plaintiff's employment.

57. As a result of these retaliatory acts, the Plaintiff suffered damages in the form of loss of wages and benefits, mental anguish, anger, emotional distress and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for judgment against Defendant in excess of $100,000.00, consisting of back pay and loss of benefits, front pay, emotional distress and mental anguish, attorney fees, litigation expenses, prejudgment interest, and such other and further relief as the Court deems just and proper.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII
(Relative to Gender)

58. The foregoing paragraphs are incorporated herein by reference.

59. Plaintiff reported to his supervisors and to CBRE Human Resources what he in good faith believed to be gender discrimination at CBRE. Specifically, in December 2019, Plaintiff reported that he believed two qualified women in his department had been passed over for promotion in favor of less qualified male candidates and that Plaintiff believed the actions to have been motivated by gender.

60. Because of Plaintiff's complaint of gender discrimination at CBRE, Plaintiff was subjected to adverse actions including attempts to impose unfair or unwarranted discipline and ultimately the termination of Plaintiff's employment.

61. As a result of these retaliatory acts, Plaintiff has suffered damages consisting of emotional distress, mental anguish, loss of enjoyment of life, and past and future financial loss.

62. In retaliating against Plaintiff, Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. Consequently, Defendant is liable for punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant for damages in excess of $100,000, consisting of emotional distress, mental anguish, loss of enjoyment of life, past financial loss, future financial loss or reinstatement, punitive damages, attorney fees and litigation expenses, and prejudgment interest.

Respectfully Submitted by:

SLOAN, EISENBARTH, GLASSMAN,
    MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Avenue, Ste 1000
Topeka, KS  66603-3456
Phone:      (785) 357-6311
Fax:        (785) 357-0152

 s/ Danielle N. Davey
Danielle N. Davey, KS #24205
ddavey@sloanlawfirm.com
**Attorneys for Plaintiff**

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

SLOAN, EISENBARTH, GLASSMAN
    McENTIRE & JARBOE, L.L.C.

BY:    S/Danielle N. Davey
        Danielle N. Davey, KS #24205
        Attorney for Plaintiff

## DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above-captioned matter.

SLOAN, EISENBARTH, GLASSMAN
    McENTIRE & JARBOE, L.L.C.

BY: s/Danielle N. Davey
      Danielle N. Davey, KS #24205
      Attorney for Plaintiff